UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------

JAPHNY SAUVEUR,

                       Plaintiff,

- against –

FEDERATION OF ORGANIZATION,

                       Defendant.

------------------------------------------------------------

**MEMORANDUM DECISION AND ORDER**
18-CV-2328 (AMD) (SIL)

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ JUL 9 2019 ★

BROOKLYN OFFICE

**ANN M. DONNELLY**, United States District Judge:

On April 20, 2018, the *pro se* plaintiff filed an employment discrimination action under Title VII of the Civil Rights Act of 1964 against the Federation of Organizations, a non-profit organization that seeks to help individuals that are homeless, low-income, or suffer from chronic medical conditions, among others. The defendant moved to dismiss the complaint on October 24, 2018. (ECF No. 17.) On May 30, 2019, the case was reassigned to me from the Honorable Joseph F. Bianco. For the reasons discussed below, the motion to dismiss is granted.

**BACKGROUND[1]**

For about nine-and-a-half years, the plaintiff, an African-American, Haitian woman, worked as a rehabilitation technician, a rehabilitation associate, and an employment specialist for a non-profit called the Federation Employment & Guidance Services ("FEGS"), which was later acquired and run by the Jewish Board of Family and Children Services ("JBFCS"). (ECF No. 1

---

[1] All facts are taken from the complaint, its attachments, and the plaintiff's opposition to the motion to dismiss. (ECF Nos. 1, 21.) "[A]lthough courts generally will not accept factual allegations raised for the first time in opposition to a motion to dismiss, some courts have construed the mandate to read a *pro se* plaintiff's papers liberally as allowing for consideration of such allegations." *Guity v. Uniondale Union Free Sch. Dist.*, No. 15–CV–5693, 2017 WL 9485647, at *1 (E.D.N.Y. Feb. 23, 2017), *report and recommendation adopted*, No. 15–CV–5693, 2017 WL 1233846 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks and citation omitted) (collecting cases).

1

at 9, 13; ECF No. 21 at 3.)[2] According to the plaintiff, on December 10, 2015, she interviewed for a position as a case associate at the Federation of Organizations, which was "taking over the Suffolk PROS (Personalized Recovery Oriented Services) program in Copiague," a program that JBFCS and FEGS had previously run. (ECF No. 1 at 10; ECF No. 21 at 2–3.) Elizabeth Galati and an unnamed male associate interviewed the plaintiff; the plaintiff claims that Ms. Galati and her associate were "very cold and a bit dismissive," made "no eye contact" with her, and had "smirk[s] on their faces as if they were mocking [her] responses." (ECF No. 1 at 13.) The plaintiff felt "extremely uncomfortable being in the room," and says that she "knew [she] was not going to be a candidate from the moment [she] walked in." (*Id.*)

On January 5, 2016, Ms. Galati advised the plaintiff by letter that she was not going to be considered for the position, but encouraged her to apply for "other positions available at [the] Federation of Organizations;" a list of other available jobs was attached to the letter. (ECF No. 21 at 13.) According to the plaintiff, the defendant hired five of her co-workers, all of whom were white; only she and her African-American, Haitian co-worker were not selected for further consideration for the job. (*Id.*)

Ten days later, on January 15, 2016, the plaintiff called Michele Cohn, the Human Resources Director at the Federation of Organizations to "get a better idea of why [she] wasn't hired," but Ms. Cohn was not helpful. (ECF No. 1 at 13.) The plaintiff asked Ms. Cohn why she did not get the job given her work experience and credentials, and Ms. Cohn explained that "hiring was not solely based on experience or salary but various components," including whether the candidate would help "merg[e] staff from . . . other locations" and "make [the defendant's] programs stronger." (*Id.*) The plaintiff claims that Ms. Cohn could not articulate why the

---

[2] The page numbers correspond to those generated by the Court's Electronic Court Filing system.

2

plaintiff did not have these qualities. (*Id.*) When the plaintiff asked Ms. Cohn why less qualified candidates were hired, Ms. Cohn gave no "clear[] answer[s]," but suggested that the plaintiff consult the agency's website for other job listings. (ECF No. 21 at 5.) According to the plaintiff, Ms. Cohn "seemed very uncomfortable" with the plaintiff's questions and did not "really explain[] anything." (*Id.* at 12.) In a "final question" to Ms. Cohn, the plaintiff asked, "It seems prejudicial that mostly WHITE less qualified staffs [*sic*] were hired. Why?" (*Id.*) Ms. Cohn said that all were welcome at the Federation of Organizations, and that she was sorry that the plaintiff felt she was the victim of discrimination. (*Id.* at 14.) The plaintiff alleges that Ms. Cohn kept "dismissing [her] concerns," apologizing, and directing her to other positions on the Federation of Organizations website. (*Id.*)

The plaintiff filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on November 22, 2016, and filed a charge complaining about the alleged discrimination a week later. (*Id.* at 6.) The plaintiff claims that "[t]he process of reaching a representative from the EEOC . . . was extremely difficult;" she was put on hold several times, and ultimately disconnected. (ECF No. 21 at 2.) Her attempt to fax her claim to the New York EEOC office failed because of a power outage the New York EEOC. (*Id.*) She had to contact the Washington D.C. EEOC headquarters and fax her claim there. (*Id.*) The plaintiff alleges that the EEOC "granted [her] an extension" because of these difficulties. (*Id.*) On February 16, 2018, the EEOC issued a right to sue letter. (ECF No. 1 at 8.)

The plaintiff brings claims of employment discrimination and retaliation based on her race, color, gender/sex, and national origin pursuant to Title VII of the Civil Rights Act of 1964. (*Id.* at 3–4.) The plaintiff claims that the defendant "caus[ed] [her] lots of stress" and that her

3

"self-esteem has severely been shaken;" the plaintiff seeks to recover her "loss of income." (ECF No. 1 at 6.)

## DISCUSSION

A complaint must plead enough facts to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). At the pleading stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations in the complaint." *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint fails to state a claim "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

*Pro se* complaints are held to less stringent standards than those drafted by attorneys; courts read *pro se* complaints liberally and interpret them to raise the strongest arguments they suggest. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008). Where a liberal reading of the pleading "gives any indication that a valid claim might be stated," the Court must grant leave to amend it at least once. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quotation marks and citation omitted).

The defendant argues that the plaintiff's discrimination and retaliation claims must be dismissed because the plaintiff (1) failed to file a charge with the EEOC within 300 days of the alleged unlawful employment practice, (2) fails to state any adverse employment action to support her retaliation claim, and (3) does not plead an inference of discriminatory motive. (ECF No. 12.) The defendant's motion to dismiss is granted.

4

Title VII prohibits an employer from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). "Under Title VII, a plaintiff in New York State must file an employment discrimination charge with the EEOC within 300 days after an 'alleged unlawful employment practice occurred.'" *Perez v. Harbor Freight Tools*, 698 F. App'x 627, 628 (2d Cir. 2017) (summary order) (quoting 42 U.S.C. § 2000e-5(e)(1) and citing *Butts v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)).

A liberal interpretation of the complaint suggests that the unlawful employment practice was Ms. Cohn's inability to explain on January 15, 2016 why the plaintiff was not hired as a case associate. This means that the plaintiff's EEOC charge would have been due on November 10, 2016; the plaintiff did not file her charge until November 29, 2016,[3] nineteen days after the 300-day period expired.

"The filing requirement, however, is not absolute and is subject to equitable tolling." *Perez*, 698 F. App'x at 628 (citing *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)). Equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli-Edelglass*, 333 F.3d at 80 (internal quotation marks, citations, and alterations omitted). The "burden of demonstrating the appropriateness of equitable tolling . . . lies with the plaintiff."

---

[3] It is unclear from the pleadings whether the plaintiff argues that her EEOC intake questionnaire should be interpreted as her EEOC charge. (*See* ECF No. 21 at 2 (discussing her filing of "the questionnaire to Washington").) In any event, the intake questionnaire is insufficient to satisfy the charge-filing requirement. *See Holowecki v. Federal Express Corp.*, No. 02-CV-3355, 2002 WL 31260266, at *4 (S.D.N.Y. Oct. 9, 2002) (rejecting the argument that an intake questionnaire and affidavit filed with the EEOC satisfied the charge requirement). Even considering the intake questionnaire as the EEOC charge, the plaintiff submitted the questionnaire on November 22, 2019, twelve days after the 300-day period expired.

5

*Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000) (citation omitted). When determining whether to toll Title VII's time limits, a court should consider whether the plaintiff "(1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Id.* at 80–81 (quoting *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)).

The plaintiff does not claim that she filed the EEOC charge within the required time. Rather, she argues that the period should be tolled because the process "was extremely difficult." (ECF No. 21 at 2.) The plaintiff claims that she tried calling an EEOC representative several times and was put "on hold for more than an hour." (*Id.*) This is not a rare or exceptional circumstance that warrants tolling. *See Ighile v. Kingsboro ATC*, No. 08–CV–450, 2012 WL 12860130, at *3 (E.D.N.Y. Sept. 11, 2012), *aff'd*, 559 F. App'x 54 (2d Cir. 2014) (Allegations that the plaintiff "made many phone calls to the agency, that the EEOC did not give him advance warning of the particular day on which the fax would arrive, and that as a *pro se* litigant he never had a case like this before so did not know the protocol . . . do not rise to the level of extraordinary circumstances." (internal quotation marks and citation omitted)).

She also asserts that when she was "able to complete [her] claim" and ready to fax it, she was informed that the "New York field office had a power outage and . . . was unable to submit [her] claim." (ECF No. 21 at 2.) Ultimately, she faxed her claim to the Washington D.C. office. (*Id.*) Even assuming the power outage was an extraordinary circumstance, the plaintiff has not explained why, if she had "acted with reasonable diligence," it would have caused a nineteen day delay.

Last, the plaintiff claims that she "was given an extension on the paperwork," and therefore, her charge was timely. (ECF No. 21 at 2.) Even if the EEOC granted the plaintiff an

6

extension and told her that she could file her charge after the 300-day deadline, this would not warrant equitable tolling. *See Spira v. Ethical Culture Sch.*, 888 F. Supp. 601, 602 (S.D.N.Y. 1995) (refusing to toll the statute of limitations based upon the plaintiff's allegation that an EEOC worker erroneously told him that the ninety-day period was determined by counting by business days rather than calendar days). Moreover, the plaintiff claims that the EEOC—not the defendant—told her that her charge would be timely; it is "questionable whether [the EEOC's] acts could lead to equitable tolling." *Vernon v. Cassadaga Valley Cent. Sch. Dist.*, 49 F.3d 886, 891 (2d Cir. 1995) (citing *Long v. Frank*, 22 F.3d 54, 58 (2d Cir. 1994) ("[E]quitable tolling applies in cases where the federal government is a *party defendant* . . . .") (emphasis applied)).

Although the EEOC filing procedures may be confusing and difficult for a layperson, the plaintiff has not established that equitable tolling is appropriate in these circumstances. *See Curtis v. Radioshack Corp.*, 190 F. Supp. 2d 587, 590 (S.D.N.Y. 2002) ("[I]n order to establish an 'evenhanded administration of the law,' district courts are compelled to heed the Supreme Court's warning not to disregard the timing requirements simply because we feel sympathy for the plaintiff.") (citing *Smith v. Henderson*, 137 F. Supp. 2d 313, 317–18 (S.D.N.Y. 2001) and *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984)).

Even though the plaintiff has not met the 300-day period, I briefly address the merits of her retaliation and discrimination claims.

Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [s]he has made a charge" under Title VII. 42 U.S.C. § 2000e-3(a). To sustain a Title VII retaliation claim, a plaintiff must plausibly allege that (1) the defendant took adverse employment action against her (2) "because" she complained of or otherwise opposed discrimination. *See Vega v. Hempstead Union School Dist.*, 801 F.3d

72, 91 (2d Cir. 2015); *Chowdhury v. Sadovnik*, No. 17-CV-2613, 2017 WL 4083157, at *6 (E.D.N.Y. Sept. 14, 2017). Here, the plaintiff does not allege that the defendant took any actions against her after she complained to Ms. Cohn or the EEOC about the alleged discrimination; therefore, the alleged adverse employment action—namely, the defendant's decision not to hire the plaintiff—could not have been caused by her discrimination complaint.

Likewise, for a Title VII discrimination claim to survive a motion to dismiss, the plaintiff must allege facts that plausibly suggest that (1) her employer took an adverse action (2) because of her race, color, gender/sex, and national origin. *See Vega*, 801 F.3d at 85–86; *Chowdhury*, 2017 WL 4083157 at *3–4. Title VII requires that the complaint provide "at least minimal support" that the adverse employment action "was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). The complaint is devoid of allegations regarding any discrimination based on the plaintiff's gender or sex or national origin. The only reference to discrimination is the plaintiff's allegation that the defendant hired five of her co-workers, all of whom were white, but did not consider the plaintiff or her co-worker, the only other African-American, Haitian female applicant for the job.

According to the plaintiff the five white employees were "less qualified" and were "interns." In the failure to hire context, "[a]n employer's choice of a less qualified employee not from [p]laintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination." *Butts v. N.Y.C. Dep't of Hous. Pres. and Dev.*, No. 00-CV-6307, 2007 WL 259937, at *9 (S.D.N.Y. Jan. 29, 2007), *aff'd sub nom. Butts v. N.Y.C. Dep't of Hous. Pres. & Dev.*, 307 F. App'x 596 (2d Cir. 2009); *see Terry v. Ashcroft*, 336 F.3d 128, 139 (2d Cir. 2003) (finding an inference of discrimination where a white plaintiff alleged that the job application was "marked with his race and the position was offered to an allegedly significantly

8

less qualified African–American man"). Although the plaintiff claims that the individuals hired were "less qualified," she does not specify how long they worked, their education, or how their experience made them "less qualified." *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 316 (S.D.N.Y. 2015) (The plaintiff's assertion that he "discovered that many entry level candidates selected or hired by [Defendant] were younger and less qualified than [him]" without including details about "when they were hired" and "their experience, age, or qualifications" "[wa]s entirely conclusory," "naked," and "devoid of further factual enhancement," and therefore could not survive a motion to dismiss.); *cf. Szewczyk v. City of New York*, No. 15–CV–918, 2016 WL 3920216, at *6 (E.D.N.Y. July 14, 2016) (Allegations that the individual who was hired was of a different nationality and "unlike Plaintiff, did not have a Master's Degree from an American university and was therefore less qualified" were sufficient to raise an inference of discrimination.).

## CONCLUSION

Accordingly, the defendant's motion to dismiss is granted, and the complaint is dismissed. A court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations and quotation marks omitted). "The standard governing leave to amend, flexible to begin with, is further liberalized for *pro se* plaintiffs." *Marcelin v. Cortes-Vazquez*, No. 09–CV–4303, 2011 WL 346682, at *2 (E.D.N.Y. Jan. 28, 2011) (citing Fed. R. Civ. P. 15(a)(2) and *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Because the plaintiff is representing herself, I give her one final opportunity to cure the deficiencies discussed in this order. Specifically, the new complaint must make specific factual allegations about why the 300-day limit should be equitably tolled—the plaintiff should specify

when she began calling the EEOC and when she tried to fax the charge to the New York office—and detail the qualifications of the individuals who were hired and explain why the plaintiff believes they are less qualified. If the plaintiff does not file an amended complaint within 30 days from the date of this order or if she files an amended complaint that does not cure the deficiencies discussed in this order, this case will be closed.

**SO ORDERED.**

                                               s/Ann M. Donnelly
                                               _____
                                               Ann M. Donnelly
                                               United States District Judge

Dated: Brooklyn, New York
       July 9, 2019